IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


THOMAS R. WILLIAMSON, III,

    Appellant,

vs.                                    CASE NO. 1:07-cv-00016-MP-AK

MOLTECH CORPORATION n/k/a
SION POWER CORPORATION,

    Appellee.

_____/

## **ORDER**

This matter is before the Court on Williamson's appeal of a summary judgment granted in favor of Moltech[1] on its objection to Williamson's timely filed proof of claim (Claim No. 36) in Moltech's confirmed, Chapter 11 Case (In Re Moltech Corporation, Case No. 01-00512 (Bankr. N.D. Fla.)). Both sides filed their appellate briefs, and a hearing was held on May 16, 2007. (doc. 21). For the reasons below, the Court reverses the bankruptcy court's granting of summary judgment in favor of Moltech.

Mr. Williamson was the president of Moltech starting in January of 1994. As part of his compensation package, he entered into an incentive stock option ("ISO") contract which allowed

---

[1] Moltech has since become Sion Power Corporation.

him to purchase "restricted" stock at $.05.[2]  In January of 1995 he attempted to exercise the option but Moltech refused.[3]  Eight days later, he was terminated by Moltech.  After his termination, Williamson filed suit in New York state court, arguing that the termination was unlawful and that he was owed damages for the breach of the ISO contract.  In the New York action, Moltech moved for summary judgment on the breach claim, but summary judgment was denied.  The denial was upheld on appeal in New York.

In 2001, Moltech entered Chapter 11 bankruptcy, and the New York action was stayed.  Mr. Williamson subsequently filed claim number 36 in the bankruptcy proceeding, seeking damages of $3,000,000 for breach of the ISO agreement and wrongful termination.  Moltech then moved for summary judgment on claim number 36, claiming that even if it had breached the ISO agreement and wrongfully terminated Mr. Williamson, he has no damages because the stock was restricted, unsalable, and would have been canceled along with all other pre-petition stock through the bankruptcy proceeding.  In response, Mr. Williamson offered various affidavits which provided methods for valuing restricted stock, including the accountant for Moltech who valued the options for tax purposes.

For the purposes of Moltech's summary judgment motion, the bankruptcy court accepted Williamson's allegations of wrongful termination and Moltech's subsequent breach of the ISO Agreement as true, thereby making damages the only issue for consideration.  The Bankruptcy

---

[2]The ISO contract allowed Williamson to purchase options in various stages corresponding to his tenure with the company and achievement of certain objectives.  Originally he was entitled to purchase shares at $.10, but after a stock split the exercise price was adjusted to $.05.

[3]Mr. Williamson previously exercised 8,600 options, purchasing shares he was entitled to under stages 1 and 2.  The heart of the current dispute is options that were purchasable at later stages.

Court ruled that Williamson failed to produce any evidence showing that he suffered damages as a result of Moltech's breach of the ISO Agreement, reasoning that "[e]ven if the contract had been fully performed and [Williamson] had gotten the shares he claims he is owed, Mr. Williamson would not have been able to sell the shares." "All Mr. Williamson would have ended up with is unsalable stock that later became worthless." Accordingly, the bankruptcy court granted summary judgment in favor of Moltech on the grounds that Williamson failed to produce any evidence of damages suffered as a result of Moltech's alleged breach of the ISO Agreement. Mr. Willamson now appeals that holding.

This Court finds that the bankruptcy court erred because although Williamson's shares were restricted, they were not unsalable. As a result, the shares were not so restricted that they were worthless as a matter of law. Moreover, to show the restricted stock could be valued for the purpose of calculating damages with reasonable certainty, Mr. Williamson offered various affidavits providing methods for valuing his restricted stock. Thus, as discussed more fully below, the Court finds that there is a genuine issue of a material fact regarding the value of Williamson's options.

In the Bankruptcy filings, Williamson argues that the stock he could have purchased under the ISO agreement, although restricted, was sellable: "[c]ontrary to Mr. Rosenburg's 'undisputed facts,' there were sales of the Debtor's common stock at and around the time at issue in this matter notwithstanding the alleged 'restricted' nature of the stock or the fact that the Debtor was a closely held corporation." (<u>In Re Moltech Corporation</u>, Case No. 01-00512, Doc. 538, Pg. 9 (Bankr. N.D. Fla. Oct. 2, 2006 )).

Further, the language of the Stock Purchase Agreement executed between Williamson and Moltech confirms that the restricted shares Williamson could purchase through his options

were sellable in some circumstances. Section 2(d) of the Stock Purchase Agreement provides for the disposition of purchased shares:

> Optionee hereby agrees that Optionee shall make no disposition of the purchased shares (other than a permitted transfer pursuant to 3(a) hereof) unless and until: (i) Optionee shall have notified Secretary of the Company of the proposed disposition and provided a written summary of the terms and conditions thereof; (ii) Optionee shall have complied with all requirements of this Agreement applicable to the disposition of the Purchased Shares; and (iii) Optionee shall have provided Company with written assurances, in form and substance satisfactory to counsel for the Company, either that (A) proposed disposition does not require registration of the Purchased Shares under the 1933 Act or (B) all appropriate action necessary for compliance with the registration requirements of the 1933 Act or of any exemption therefrom has been taken.

That is, under this language, Williamson agreed to make no disposition unless it is a permitted transfer pursuant to 3(a), or unless the 3 requirements of 2(d) are met. While the ability to give the stock away under 3(a) may not be sufficient to make it negotiable, the ability to dispose of the stock if the disposition complies with the contractual provisions does. Under the provisions of the Stock Purchase Agreement, although Williamson's stock had restrictions, the stock was still negotiable.

Additional evidence of the stock's ability to be sold is found in a letter to Mr. Williamson from an official from Moltech. (Attachment 5 to Doc. 3). The letter stated in part:

> As you know, this is restricted stock and can be sold only under specific circumstances. The company may not be public, or, even if it is, it may not wish to issue an S-8 which would be required to register your stock so it could be sold at that specific time. Most of the time it would be routine to do so, but not always. You might have to wait for the 2 year period required under Rule 144. I don't know all the circumstances, to be sure, but any of them could mean that you would have a large outlay of cash for taxes on the value of the stock at the time of exercise, with no immediate ability to sell the stock in order to pay for those taxes.

While the letter's author discusses the circumstances that might postpone Williamson from selling his stock, the official thereby reveals that Williamson could eventually sell the restricted stock. Because the underlying "restricted" stock could therefore have been sold prior to the bankruptcy dissolution of all the shares, this Court cannot agree that Williamson's stock options were unsalable and therefore worthless as a matter of law.

The value of Williamson's options at the date of breach is thus a controverted issue. While Moltech argues that the stock had no value because of Moltech's financial troubles, Williamson offers evidence of valuation methods that would afford the stock significant value.

The appropriate place for the determination of value regarding Williamson's options should be before a trier of fact. Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The bankruptcy court's grant of summary judgment is reversed, and this case is remanded for further proceedings.

**DONE AND ORDERED** this  _7th_   day of June, 2007

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge